UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEROME WALDO,

                Plaintiff,

— against —

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION; KINGS COUNTY HOSPITAL
CENTER,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM and ORDER**

06-CV-2614 (SLT) (LB)

**TOWNES, United States District Judge:**

On March 23, 2006, *pro se* plaintiff, Jerome Waldo ("Plaintiff"), filed suit against his former employer, Kings County Hospital Center ("KCHC") and New York City Health and Hospitals Corporation ("HHC"), (collectively "Defendants"), alleging violations of Title VII of the Civil Right Act, 42 U.S.C. §§ 2000e to 2000e-17, and state law. Plaintiff, an African American male, served as a part-time service aide at the Women, Infants and Family Clinic ("clinic") at KCHC from July 29, 2002 to May 19, 2006. Plaintiff alleges that KCHC repeatedly declined to promote him on account of his gender and national origin. He also charges that Defendants retaliated against him for filing numerous complaints against his supervisors, including a grievance with the Equal Employment Opportunity Commission ("EEOC"). He further asserts that he faced a hostile work environment and was placed on involuntary medical leave and terminated in violation of Title VII. On August 16, 2007, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On March 10, 2008, the Court referred the matter to Magistrate Judge Lois Bloom to prepare and submit a Report and Recommendation ("R & R") containing findings of fact, conclusions of law, and a recommended disposition of the motion, pursuant to 28 U.S.C. §

1

636(b)(1). On February 26, 2009, Judge Bloom filed the R & R in which she recommended that Defendants' motion for summary judgment be granted. On May 22, 2009, Plaintiff timely filed objections to Judge Bloom's R & R.

For the reasons set forth below, the Court adopts the R & R and grants Defendants' motion for summary judgment.

## DISCUSSION

This Court reviews *de novo* those portions of the magistrate judge's recommended disposition to which specific written objections have been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. § 72(b)(3). After considering such objections in light of the applicable law and the factual record, this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); *see also Grassia v. Scully*, 892 F.2d 16, 19-20 (2d Cir. 1989). Nevertheless, where a party "makes only conclusory or general objections, or simply reiterates his original arguments," this Court need only review the R & R for clear error. *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007) (internal quotation and citation omitted).

Plaintiff filed an 18-page, hand-written submission objecting to the R & R (the "submission"). Annexed to the submission, Plaintiff also provided an additional 16 pages of documents. The nature of Plaintiff's objections is difficult to characterize as the submission lacks a discernible structure. The document begins by explaining Plaintiff's lack of understanding of the Federal Rules of Civil Procedure and the disadvantages of facing an adversary represented by counsel. From there, the submission recounts numerous factual allegations as set forth in the initial complaint and seemingly asserts some legal conclusions purporting to entitle Plaintiff to relief.

2

As it is this Court's duty to construe submissions of a *pro se* litigant liberally and to interpret them "to raise the strongest arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006), the Court reads the submission to raise the following issues: (1) the R & R reached some erroneous factual findings, (2) the R & R improperly denied his retaliation claim, and (3) the evidence was sufficient to support his Title VII claims based on national origin and gender. The Court assumes familiarity with R & R and the facts of this case.

## I. R & R's Factual Findings

To the extent Plaintiff challenges the R & R's factual findings, his objections are overruled. First, the Court conducted *de novo* review of the facts as articulated by the R & R and discerns no error in Judge Bloom's report. Second, even in his submission, Plaintiff does not allege a different set of facts than those presented in the R & R. His submission only provides further facts, explanations or justifications for those findings. For example, the R & R states that Plaintiff was disciplined for refusing to comply with an order to apply wax to the waiting area of the clinic. R & R 3. Plaintiff does not refute this finding, but states that he refused the order because he was given only one hour to complete the task before the opening of the clinic. Submission 5.

Third, none of the facts as presented by Plaintiff would alter the result that he failed to make a Title VII showing. For example, the motivations of Plaintiff's refusal to comply with an order by a supervisor is immaterial to the resolution of the case. None of the claims he asserts against Defendants turns on whether he had a good-faith basis to refuse a supervisor's directive.

Most importantly, Plaintiff does not deny placing numerous telephone calls to co-workers or sending the series of letters and faxes to his supervisors that demonstrate delusional or confrontational behavior. *See, e.g.*, R & R 20. Even viewed in the light most favorable to

3

Plaintiff, such threatening conduct establishes a legitimate, non-discriminatory or non-retaliatory reason for his termination. *See Rikhy v. AMC Computer Corp.*, No. 01-CV-7007, 2003 WL 1618529, at *4 (S.D.N.Y. Mar. 28, 2003) (stating that "[i]nsubordination and threatening behavior both constitute legitimate non-discriminatory reasons for discharge in this Circuit"); *see also Rivera v. Smith*, No. 07-CV-3246, 2009 WL 124968, at *5 (S.D.N.Y. Jan. 20, 2009).

## II. Retaliation Claim

Claims of retaliation are analyzed under the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting rules. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). To establish a *prima facie* case of retaliation under Title VII, a plaintiff is required to show: (1) that he participated in a protected activity; (2) the defendant knew of the protected activity; (3) he experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Only a "minimal" and "*de minimis*" showing is necessary to establish a *prima facie* retaliation claim at the summary judgment stage. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). If a plaintiff establishes a *prima facie* case of retaliation and the employer provides a legitimate, non-retaliatory reason for the challenged adverse action, the plaintiff must present evidence that would be sufficient to permit a rational jury to conclude that the employer's explanation is merely a pretext for impermissible retaliation. *See Cifra*, 252 F.3d at 216 (internal citations omitted).

Plaintiff has met the *de minimis* showing of a *prima facie* retaliation claim. In this case, he submitted into evidence at least five internal complaints he filed during the period from July 2005 through November 2005. *See* Pl. Am. Opp. A8-57. Plaintiff also filed a complaint with the EEOC on January 9, 2006. Def. Decl., Ex. Q (copy of EEOC Charge of Discrimination).

4

Plaintiff was placed on involuntary medical leave effective May 19, 2006 and terminated on June 19, 2007. Def. Decl., Ex. HH. The proximity of these complaints and the adverse employment actions, buttressed by Defendants knowledge of the complaints, supports a *prima facie* case.

In turn, Defendants have proffered that they placed Plaintiff on involuntary medical leave and eventually terminated Plaintiff because of concerns for the safety of the staff and participants at the KCHC clinic. Based on Plaintiff's numerous letters, faxes, and phone calls complaining of persecution and abuses at the hands of his supervisors and co-workers, the staff at KCHC became increasingly alarmed by Plaintiff's paranoid behavior. On March 6, 2006, KCHC's clinic director requested that Plaintiff be transferred out of the clinic. Def. Decl., Ex. X. The director described Plaintiff as becoming "more and more confrontational with staff" and the staff as becoming "more and more uncomfortable around him." *Id.* The director felt that the situation was "untenable" and she feared that his condition related to a "disorder of some kind." *Id.* Plaintiff's paranoia escalated when he filed an unsubstantiated criminal complaint with HHC police, accusing his supervisor's husband of threatening to kill him on March 14 and 15. Compl., Hospital Police Statement Form. Subsequently, an executive director of the clinic wrote to the director of human resources at KCHC requesting an "appropriate intervention" with Plaintiff because of her "increasing concern[s] about [the] safety" of her staff and KCHC participants. Def. Decl., Ex. Z. She stated that Plaintiff was "quickly becoming a threat to himself and others." *Id.*

On March 28, 2006, Plaintiff was temporarily relieved of his duties and ordered by KCHC to undergo a psychological evaluation to determine whether he was medically fit to return to his duties. An independent psychiatrist, Dr. Steven A. Fayer, evaluated Plaintiff and reported that he "manifests a serious psychiatric disturbance." Def. Decl., Ex. FF. Dr. Fayer described

Plaintiff's letters to his co-workers and supervisors as "full of paranoid ideations, disordered thinking and accusations of people out to hurt and kill him." *Id.* He found that Plaintiff had "[d]ifficulties with impulse control," indicating that he was "very depressed," "demanding," "irritable" and "particularly angry when the various allegations [against his co-workers and supervisors] were discussed." *Id.* Plaintiff was "obsessed about work and [about] the various people trying to get him." *Id.* Dr. Fayer diagnosed him with a "paranoid psychotic disorder" and found that he was in need of psychiatric treatment and medications. *Id.* He concluded that Plaintiff was "unfit to perform his duties as a service aide" at KCHC. *Id.* Following this evaluation, Plaintiff was placed on involuntary leave for a period of up to one year. He was later terminated, effective June 19, 2007.

Under these circumstances, Defendants had a legitimate fear that Plaintiff's increasing paranoia and aggressive behavior would escalate into a threatening and dangerous situation for KCHC's staff and participants. It is well-established that such threatening or disruptive conduct is a sufficient basis for the removal or termination of an employee. *See, e.g., Harrison v. N. Shore Univ. Hosp.*, No. 04-CV-2033, 2008 WL 656674, at *9 (E.D.N.Y. March 6, 2008) ("It is clear that an employee's disruptive conduct is a legitimate reason for termination."). Thus, Defendants have met their burden to establish a legitimate, non-retaliatory basis for the adverse employment actions taken against Plaintiff.[1]

---

[1] In his submission, Plaintiff repeatedly asserts that a plaintiff need not prove the underlying claim of discrimination in a complaint in order to prosecute a retaliation claim. Submission 10. Plaintiff is correct; a successful retaliation claim "is not dependent on the merits of the underlying discrimination complaint." *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir. 1986). Nevertheless, the fact that some of the complaints and accusations against his co-workers and supervisors involved charges of discrimination offers no reprieve for his failure to establish a retaliation claim. The Second Circuit has held that "disruptive, unreasonable" complaints, even those alleging discrimination, still serve as a legitimate ground for termination in a retaliation claim. *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000).

Having found a legitimate, non-retaliatory reason for Plaintiff's placement on involuntary medical leave and termination, the burden shifts back to Plaintiff to show that such reason was a pretext and that retaliation was the Defendants' true motive. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Plaintiff has failed to overcome the strong showing put forth by Defendants. Nothing in the record supports the conclusion that Defendants' reason was false or that Defendants' true intent was retaliation. Plaintiff only reiterates that the adverse employment actions were based on his "whistleblowing" on the "special unlawful treatment" received by Haitian workers and participants at KCHC. Submission 16. Nevertheless, these conclusory, unsupported allegations are not enough to meet Plaintiff's burden here. *See Blanco v. Brogan*, 620 F. Supp. 2d 546, 562 (S.D.N.Y. 2009) (plaintiff's subjective impression are insufficient to establish pretext); *Foxworth v. Am. Bible Soc'y*, No. 03-CV-3005, 2005 WL 1837504, at *9 (S.D.N.Y. July 28, 2005) (same). Plaintiff's retaliation claim must fail because there is simply no "proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Richardson v. N.Y.S. Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir. 1999); *see also Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (affirming grant of summary judgment for defendant on retaliation claim where plaintiff failed to put forth any evidence other than her own personal belief that the defendant's articulated nondiscriminatory reason for employment action was pretextual). Accordingly, the Court grants summary judgment dismissing Plaintiff's retaliation claim.

### III. Involuntary Medical Leave and Termination

Next, Plaintiff argues that his placement on involuntary medical leave and termination violate Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (it is unlawful "for an employer . . . to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual . . .

because of such individual's race, color, religion, sex or national origin"). Like Plaintiff's retaliation claim, the *McDonnell Douglas* burden-shifting analysis applies to this claim. *See Rivera*, 2009 WL 124968, at *3. For the same reasons that support dismissal of the retaliation cause of action, this claim must also fail.

Even assuming that Plaintiff could make a *prima facie* showing of discrimination, Plaintiff has again failed to assert that Defendant's proffered reason for his placement on leave and termination was pretextual. Defendants have explained that their concern for the safety of their workers and clinic participants prompted their decision to relieve Plaintiff of his duties and terminate him. Plaintiff has not presented any evidence demonstrating that this legitimate, non-discriminatory purpose was false or a pretext for discrimination. In his submission, he claims that his placement on medical leave was not "intended for safety reason[s]", but the "motive" was to "hurt the plaintiff" and to "terminate [him] permanently." Submission 8. He also avers that KCHC official wished to terminate him because of his "non-[H]aitian background." *Id.* at 17. Nevertheless, without any evidence, these conclusory allegations cannot defeat Defendants' summary judgment motion. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (dismissing Title VII claim where employer showed valid, unrefuted reasons for plaintiff's termination and plaintiff offered nothing but conclusory allegations regarding defendant's actions); *see also Rivera*, 2005 WL 236490, *5 (plaintiff's subjective belief concerning the motivation behind his termination, standing alone, is insufficient to survive summary judgment); *Payne v. State of New York Power Auth.*, 997 F.Supp. 492, 498-99 (S.D.N.Y. 1998) (plaintiff's subjective belief that she was treated differently owing to protected class membership insufficient to survive summary judgment). Accordingly, Plaintiff fails to meet his Title VII burden and this claim must be denied.

## IV. Failure to Promote

Plaintiff also contends that he was denied promotions at KCHC because of his national origin and gender in violation of Title VII. Nevertheless, Plaintiff fails to make even a *prima facie* showing of discrimination. In order to establish a *prima facie* failure to promote claim, one element Plaintiff must demonstrate is that he "applied and was qualified for a job for which the employer was seeking applicants." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (internal quotations omitted). Although Plaintiff claims he applied for four jobs at KCHC, the record reflects only one application for a full-time housekeeping job at KCHC. The job posting in the record indicates that supervisory/management skills are required for the position, Def. Decl. Ex. JJ; nevertheless, Plaintiff only worked as a part-time service aid at KCHC for 21 hours a week for less than four years. Def. Decl., Ex. FF, 5-6. Plaintiff has not indicated he has any other relevant experience. The Court agrees with the R & R's conclusion that he was not qualified for the full-time housekeeping job based on his lack of supervisory experience. R & R 11-13. Accordingly, the Court grants summary judgment dismissing this claim.

## V. Hostile Work Environment

Finally, for Plaintiff to succeed on his hostile work environment claim, he must first show that his workplace "was permeated with discriminatory intimidation, ridicule, and insult," that was "sufficiently severe or pervasive to alter the conditions" of his employment and create an abusive working environment. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotations omitted). Plaintiff's claim for hostile work environment is subject to a "demanding standard[]" in order to avoid construing Title VII as a "general civility code." *Wilson v. N.Y.P. Holdings, Inc.*, No. 05-CV-10355, 2009 WL 873206, at *27 (S.D.N.Y. Mar. 31, 2009). Furthermore, "[I]t is 'axiomatic' that in order to establish a sex-[or race-]based

9

hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex [or race].)." *Blake v. Potter*, No. 07-CV-4520, 2009 WL 1448974, at *1 (2d Cir. May 26, 2009) (alterations original) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

Plaintiff provides no evidence of a general workplace atmosphere permeated with racial or sexual intolerance. In his submission, Plaintiff solely relies on the unsupported allegation that employees and supervisors at KCHC "conspire[d]" against "non-Haitians." Submission 17. The record reflects only two incidents that invoke national origin or gender discrimination: (1) Plaintiff alleges that he was forced to attend a sexual harassment/domestic violence training where he was the only male in attendance, Pl. Am. Opp. At E6, and (2) Plaintiff was asked his national origin by a co-worker and a supervisor, Def. Decl., Ex. B, Pl. Tr. 113:9-25. Even if these allegations are credited, the few stray remarks by co-workers and the conduct complained of were not sufficiently pervasive or severe to alter the conditions of his employment to satisfy a hostile work environment claim. *See Rissman v. Chertoff*, No. 08-CV-7352, 2008 WL 5191394, at *3 (S.D.N.Y. Dec. 12, 2008) ("The few facts alleged by plaintiff relating to his race or religion do not amount to more than stray remarks made by co-workers and cannot support a plausible claim of hostile work environment"); *see also Petrosino*, 385 F.3d at 223 ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."). Thus, assuming could Plaintiff demonstrate a hostile work environment, this claim cannot survive summary judgment because he fails to show that the environment was because of his national origin or gender.

To the extent Plaintiff makes any further objections to the R & R, those objections are denied.

## CONCLUSION

For the foregoing reasons, Judge Bloom's R & R is adopted and Defendants' motion for summary judgment is granted. This case is hereby dismissed.

**SO ORDERED.**

Dated: Brooklyn, New York
August 31, 2009

/S/
SANDRA L. TOWNES
United States District Judge